*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 20b0006n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: DUANE L. BENTLEY,

*Debtor.*

_____

DUANE L. BENTLEY,

*Appellant*,

*v.*

ONEMAIN FINANCIAL GROUP, LLC,

*Appellee*.

No. 19-8026

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Covington.
No. 2:18-bk-20281—Tracey N. Wise, Judge.

Decided and Filed: July 8, 2020

Before: BUCHANAN, CROOM, and PRICE SMITH, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:** Robert R. Sparks, STRAUSS TROY CO., LPA, Cincinnati, Ohio, John M. Simms, ATKINSON SIMMS & KERMODE, PLLC, Lexington, Kentucky, for Appellant. Douglas M. Foley, Stephanie J. Bentley, MCGUIREWOODS LLP, Washington, D.C., Adam R. Kegley, FROST BROWN TODD LLC, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

JIMMY L. CROOM, Bankruptcy Appellate Panel Judge. The Debtor in this case, Duane L. Bentley ("Debtor"), asserts that the bankruptcy court erred in concluding that OneMain Financial Group, LLC ("Creditor"), did not violate the 11 U.S.C. § 524(a)(2) discharge injunction when it refused to release its lien on a vehicle that Debtor surrendered during his chapter 7 case. Specifically, Debtor argues that Creditor violated the discharge injunction by refusing to release its lien when asked to do so by Debtor and by conditioning release of the lien on payment of an undetermined amount. Debtor argues that Creditor's actions were objectively coercive and sanctionable under the standard set forth by the First Circuit Court of Appeals in *Pratt v. GMAC* (*In re Pratt*), 462 F.3d 14 (1st Cir. 2006). Debtor also argues that Creditor's actions were sanctionable under *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

## ISSUES ON APPEAL

Debtor argues that the Bankruptcy Court erred in granting Creditor summary judgment and concluding that Creditor did not violate the discharge injunction when it failed to release its lien on Debtor's vehicle after it decided not to repossess the vehicle and thereafter attempted to coerce Debtor into paying for a lien release.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686 (2015)). An order granting summary judgment to one party and denying it to another is a final order for purposes of appeal. *Walls v. Amerisure Mut.*

*Ins. Co.*, 343 F.3d 881, 884 (6th Cir. 2003) (quoting *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 235 (6th Cir.2003)); *Rogan v. Fifth Third Mortg. Co.* (*In re Rowe*), 452 B.R. 591, 593 (B.A.P. 6th Cir. 2011) (citation omitted).   The bankruptcy court's denial of a debtor's motion for contempt for violation of the discharge injunction is also a final, appealable order. *In re Glaspie*, 410 B.R. 261, 266 (E.D. Mich. 2007).

"An order granting summary judgment is reviewed de novo." *Church Joint Venture, L.P. v. Blasingame* (*In re Blasingame*), 597 B.R. 614, 616 (B.A.P. 6th Cir. 2019) (citation omitted). An order denying summary judgment "on purely legal grounds" is also reviewed de novo. *Tennessee ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 395-96 (6th Cir. 2005) (citing *Walls*, 343 F.3d at 884).   "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

The court's interpretation of 11 U.S.C. § 524 is reviewed de novo.   *Ford Motor Credit Co. v. Morton* (*In re Morton*), 410 B.R. 556, 559 (B.A.P. 6th Cir. 2009) (citation omitted).   The bankruptcy court's determination that the creditor did not violate the discharge injunction presents a mixed question of law and fact.   *Id.* (citing *WesBanco Bank Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs., Inc.*), 106 F.3d 1255, 1259 (6th Cir. 1997)).   Accordingly, "the court's conclusions of law are reviewed de novo" and its "findings of fact are reviewed under the clearly erroneous standard." *Id.*   (citations omitted).   "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525 (1948)).

**FACTS**

Debtor does not dispute any of the bankruptcy court's factual findings. As such, the factual findings are reproduced here, verbatim (footnotes in original):

> The parties agree on the material facts. In June 2017, Debtor obtained a loan from Creditor and granted Creditor a lien on a 2001 Dodge Dakota (the "Vehicle"). Debtor filed a chapter 7 petition on March 5, 2018, and Creditor received notice of the bankruptcy filing. Debtor's Schedule D, filed with his petition, stated that Creditor had an $8,000 claim secured by the Vehicle, which Debtor valued at $150. Debtor also filed a statement of his intention to surrender the Vehicle to Creditor with his petition. Debtor did not reaffirm the debt to Creditor before entry of his discharge on June 11, 2018. Creditor's lien was not avoided or eliminated in the bankruptcy, and Creditor received notice of entry of the discharge. Debtor never paid the balance of Creditor's claim. Creditor never repossessed the Vehicle, which was stored on property owned by Debtor's ex-father-in-law, Paul Reis.

> On June 29, 2018, Debtor called Creditor[1] and stated that he had received his discharge, wanted "to take the lien off the title of the vehicle that was in bankruptcy that you guys have the lien on," and advised that the Vehicle "is old. It's trash. It's totaled." [ECF No. 78-1 at 6.] Creditor's representative told Debtor: "once there's a discharge you are not responsible for the balance of the loan, but creditors are allowed to keep an interest in the lien on the vehicle and they'll ask for some kind of offer to be made for a lien release." [*Id*.] Creditor's representative then said that it sounded as though "this is just a salvage car. It's junk value probably," and told Debtor to have a local salvage yard call Creditor to provide a "scrap value offer maybe so much on the pound" at which point Creditor would "consider accepting that to release the lien. They will sell it for some minimal consideration and get the lien released." [*Id*. at 7.]

> Several weeks later, on August 1, 2018, Mr. Reis and Debtor called Creditor. Near the start of the call, Creditor's representative advised Debtor: "If your personal liability to this debt has been discharged in bankruptcy, any payments you make on this account are voluntary[.] [A]lthough you may not be legally obligated to repay this debt, [a lien] on or against collateral securing the account may have survived the discharge[]. If such a lien exists, [Creditor] may enforce any applicable state release [*sic*] to recover such collateral." [ECF No. 78-1 at 11.] The representative, speaking with Mr. Reis (at Debtor's request and

---

[1]Transcribed versions of this call and other calls involving Debtor and Creditor are in the record. Debtor affirmed at his deposition that the call transcripts accurately reflected the conversations he and Mr. Reis had with Creditor. Mr. Reis agreed that the transcripts were accurate.

with his permission), advised that Creditor would not repossess the Vehicle because "[t]he value is too low," and then said:

> So the options that we can give now are working with a salvage yard, an individual or the customer himself. If it's a customer or a third party wanting to make an offer on it against the lien, then we would require a mechanic's estimate to come along with that offer. If it's a really low offer just to support the value that you're saying the vehicle is worth. If it's a junk vehicle and doesn't run and you're wanting to just scrap it, you can contact the local salvage yard to see if they are interested in working with us. You would explain to them that we are the lienholders and they would call and make an offer on the lien and then once that is approved by management and we could work with them to get payment and release that lien to the salvage yard.

[*Id*. at 12.] Mr. Reis responded that he would have the Vehicle towed to the highway or to one of Creditor's locations. Creditor's representative then stated that Debtor still owned the Vehicle, that Creditor only had a lien on it, and that Debtor would be charged any fees associated with abandoning the Vehicle: "You can do whatever you want with the vehicle, that's up to him and you whatever you want to do with the vehicle itself. We just can't release the lien without some kind of satisfaction on that lien." [*Id*. at 15.]

Mr. Reis and Creditor's representative then discussed the options presented to Debtor. Mr. Reis stated that his "neighbor down the road has a junkyard" and "offered me $100 for it. . . ." [*Id*. at 15.] Mr. Reis and the representative also discussed whether Mr. Reis would buy the Vehicle himself for $100. Creditor's representative stated that Mr. Reis could submit an offer along with "a mechanic's estimate written up on a mechanic's shop's letterhead saying what's wrong with the vehicle and how much it costs to repair that," which Creditor would consider in deciding whether to accept his offer. [*Id*. at 12.] Although Mr. Reis first stated he did not intend "to go through a lot of hassle getting a mechanic to write it up," he later said that he knew a mechanic who could provide a written statement. [*Id*. at 12, 15.] By the end of the call, Mr. Reis suggested that he would send via email or fax a $100 offer to Creditor with pictures of the Vehicle (that would show damage to the vehicle, high odometer mileage, or otherwise provide information to support his offer), and also that if a mechanic's estimate ultimately was needed he could provide that from a local mechanic as well.

However, Mr. Reis did not send in an offer. Instead, on October 19, 2018, Mr. Reis again called Creditor and stated that a local salvage yard owner was willing to remove the car from Mr. Reis's property, pay $100 for it, and waive the tow fee.[2] Creditor's representative stated: "It would probably be best if the guy

---

[2]Debtor was present during the call but did not participate.

from the salvage yard would contact us and let us know he's picked it up and make us an offer for $100 to release it." [ECF No. 78-1 at 21.] Mr. Reis then stated: "I just want to get rid of it, but I'll give him your number." [*Id.*]

But, again, this did not occur. Instead, on November 21, 2018, Debtor moved to reopen his bankruptcy case to pursue Creditor for an alleged violation of the discharge injunction, which motion was granted. Then, on December 18, 2018, Debtor filed his Motion for Contempt against Creditor, in which Debtor alleged that Creditor violated "the discharge injunction under Section 524(a)(2) . . . by collecting and attempting to collect discharged debts by refusing to release its lien on his valueless motor vehicle until [Debtor] paid the full balance due on its [sic] prepetition debt." [ECF No. 16 ¶ 11.] Debtor sought to pursue relief for the discharge violation on his own behalf and on behalf of a class of allegedly similarly-situated debtors.

Ten days after Debtor filed the Motion for Contempt, Creditor released its lien on the Vehicle.

*In re Bentley*, 607 B.R. 889, 891-93 (Bankr. E.D. Ky. 2019).

Following the filing of Debtor's motion for contempt, the parties filed competing motions for summary judgment. The bankruptcy court conducted a hearing on the motions on September 10, 2019.

The court issued a memorandum opinion and order on October 2, 2019 ("Opinion"), granting Creditor's motion for summary judgment and denying Debtor's motion for summary judgment and motion for contempt.

The bankruptcy court began its analysis by setting forth the standard for summary judgment and noting that it "does not change when each side seeks a summary judgment in their favor." *Id.* at 893 (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Accordingly, " '[t]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248).

The court then turned its attention to the 11 U.S.C. § 524(a) discharge injunction. The court set forth the statutory language of § 542(a)(2) and stated that "[a] creditor that violates the discharge injunction may be found in contempt of court" and may be sanctioned pursuant to 11 U.S.C. § 105(a). *Id.* at 894 (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23

(6th Cir. 2000)). The bankruptcy court noted that a debtor alleging a violation of the § 524 discharge injunction bears the burden of proof and must satisfy that burden with clear and convincing evidence. The court also noted that under *Taggart*, "a creditor may be found in contempt 'when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order.' " *Id.* (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).

The bankruptcy court examined the particular facts in Debtor's case and determined that Creditor had not violated § 524(a)(2). In so doing, the court examined the case Debtor extensively relied upon, *Pratt v. GMAC* (*In re Pratt*), 462 F.3d 14 (1st Cir. 2006). *Bentley*, 607 B.R. at 894. The bankruptcy court began by recognizing that *Pratt* is "an out-of-circuit decision[.]" *Id.* The bankruptcy court explained *Pratt*'s holding as follows: "In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly." *Bentley*, 607 B.R. at 895 (internal punctuation omitted) (quoting *Pratt*, 462 F.3d at 19). The bankruptcy court recognized that such an analysis is a fact-specific inquiry and requires a court to determine whether the exercise of a creditor's *in rem* rights under state law hampers a debtor's right to a fresh start.

The bankruptcy court distinguished the facts in this case from the creditor's actions in *Pratt*. In *Pratt*, the creditor conditioned release of its lien on the debtors' payment of the full balance of the claim, whereas, in the case before the bankruptcy court, Creditor had agreed to release its lien on Debtor's vehicle for "some minimal consideration." *Id.* at 897. The bankruptcy court concluded this was an important difference.

The bankruptcy court also examined *Canning v. Beneficial Me., Inc.* (*In re Canning*), 706 F.3d 64 (1st Cir. 2013). Although *Canning* involved real property, the bankruptcy court found "the First Circuit's guidance in *Canning* . . . apropos," noting that

> [t]he First Circuit rejected the Cannings' reading of *Pratt* that "we would have to find a discharge injunction violation every time a secured creditor opposes a debtor's 'foreclose or release' demand based on the business determination that repossession is not cost effective," because "*Pratt* sought to strike a balance

between the competing state-law rights of secured creditors and the bankruptcy rights of debtors[.]"

*Bentley*, 607 B.R. at 896 (quoting *Canning*, 706 F.3d at 72). The bankruptcy court rejected Debtor's "argument about the distinction between *Pratt* and *Canning* – that *Pratt* stands as the law for 'old vehicles' (repossess or release) and *Canning* applies to real estate[.]" *Id.* at 897. The bankruptcy court held that "[t]he difference in the two cases is in the facts, not that different law applies to surrender and *in rem* remedies depending on the type of collateral involved." *Id.* The court stated that it "generally agree[d] with the First Circuit's statements in both *Pratt* and *Canning* that whether coercive behavior occurred is dependent on the facts of each case." *Id.*

In concluding that Creditor did not violate the discharge injunction, the bankruptcy court relied heavily on the fact that Creditor "did not even demand $150 from Debtor in exchange for a lien release; in fact, *Creditor did not ask Debtor to pay any funds to Creditor at all, let alone pay any specific amount.*" *Id.* Instead, Creditor offered Debtor several different methods of obtaining release of Creditor's *in rem* rights in the vehicle. The court concluded that "[n]o evidence supports Debtor's position that the options Creditor presented to accomplish a lien release were a subterfuge to coerce payment of the discharged debt." *Id.* The court also noted that Debtor could have secured the lien release by filing a motion to redeem the Vehicle under § 722 "and offer[ing] a nominal amount to bring Creditor's 'demands' to a conclusion." *Id.*

Because the bankruptcy court determined that Creditor's actions were not objectively coercive and did not violate the § 524 discharge injunction, the court concluded that it was unnecessary to determine whether Creditor should be sanctioned under the standard set forth in *Taggart*, 139 S. Ct. at 1801.[3]

Debtor filed his timely appeal on October 14, 2019.

---

[3]In denying the motion for contempt, the bankruptcy court also denied Debtor's request to certify the matter as a class action proceeding pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23. Debtor does not challenge that portion of the court's ruling.

**DISCUSSION**

I.    **SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7056 and 9014, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (internal quotation marks and citation omitted). The party moving for summary judgment has the initial "burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 433 (6th Cir. 2005) (citation omitted). The burden then shifts to the nonmoving party to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co*., 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)). When faced with competing motions for summary judgment, a court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

II.   **11 U.S.C. § 524(a)(2)**

Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [discharged under section 727 . . . of this title] as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2).[4]  "The purpose of § 524(a) is to afford a debtor a 'fresh start' by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged." *Paglia v. Sky Bank* (*In re Paglia*), 302 B.R. 162, 166 (Bankr. W.D. Pa. 2003) (citation omitted);

---

[4]Unless otherwise indicated, all citations are to title 11 of the United States Code.

*see also Isaacs v. DBI-ASG Coinvester Fund, III, LLC* (*In re Isaacs*), 895 F.3d 904, 910 (6th Cir. 2018).

As the language of § 524(a)(2) makes clear, the discharge injunction prohibits creditors from attempting to collect a discharged debt "as a personal liability of the debtor." 11 U.S.C. § 542(a)(2); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S. Ct. 1905 (2004). It does not, however, affect a creditor's *in rem* rights in the collateral. In *Johnson v. Home State Bank*, the Supreme Court held that "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." 501 U.S. 78, 84, 111 S. Ct. 2150 (1991).

The concept that a lien "rides through" bankruptcy is axiomatic. The Supreme Court recognized the principle as early as 1886 in *Long v. Bullard*, 117 U.S. 617, 621, 6 S. Ct. 917 (1886). "If a creditor had a lien to secure payment of a pre-petition debt before the Chapter 7 bankruptcy, that lien survives, or 'rides through' the Chapter 7 bankruptcy and bankruptcy discharge, unless the lien is avoided in the bankruptcy case." *In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018). "As a general proposition, where liens have 'passed through bankruptcy unaffected', a creditor may exercise valid lien rights postdischarge without violating the discharge injunction." *Botson v. Citizens Banking Co.* (*In re Botson*), 531 B.R. 719, 726 (Bankr. N.D. Ohio 2015).

Although there is no private right of action under § 524, courts enforce the discharge injunction through their civil contempt power and, in appropriate circumstances, the imposition of sanctions. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). Pursuant to the Supreme Court's decision in *Taggart v. Lorenzen*, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." 139 S. Ct. 1795, 1799 (2019). However, before sanctions may be considered, the debtor must first demonstrate that the creditor committed a violation of the discharge injunction by clear and convincing evidence. *In re Jackson*, 554 B.R. 156, 164-65 (B.A.P. 6th Cir. 2016), *aff'd*, No. 16-4021, 2017 WL 8160941 (6th Cir. Oct. 18, 2017). An otherwise valid exercise of a creditor's *in rem* rights may violate the discharge injunction "if the

debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt." *Paul v. Iglehart* (*In re Paul*), 534 F.3d 1303, 1308 (10th Cir. 2008) (internal quotation marks omitted) (citing *Pratt v. GMAC* (*In re Pratt*), 462 F.3d 14, 19 (1st Cir. 2006)); *see also In re Borowski*, 216 B.R. 922, 924 (Bankr. E.D. Mich. 1998).

Relying on the First Circuit's decision in *Pratt*, 462 F.3d 14, Debtor argues that Creditor's failure to release its lien on the Vehicle was objectively coercive and constituted a sanctionable violation of the discharge injunction.[5]  In *Pratt*, at the time of conversion from chapter 13 to chapter 7, the debtors owed approximately $2,600.00 on their vehicle.  *Id.* at 16. The debtors filed a notice indicating they intended to surrender the vehicle to GMAC.  After concluding that costs of repossession outweighed the vehicle's value, GMAC decided to leave the car in the debtors' possession and wrote off the remaining balance of its claim.

Following the chapter 7 discharge, the car became inoperable and the Pratts had it towed to a salvage yard; however, pursuant to state law, the salvage yard would not accept the car until GMAC's lien was released.  For several months, the Pratts attempted to force GMAC to either repossess the vehicle or release its lien.  GMAC would not repossess the car and refused to release its lien until the Pratts paid the total amount of the discharged debt.

The debtors in *Pratt* reopened their bankruptcy case and filed a contempt action against GMAC.  The debtors alleged that GMAC violated the discharge injunction by refusing to either (1) repossess the surrendered vehicle or (2) release the lien without full payment of the discharged loan balance.  The bankruptcy court ruled that GMAC was simply enforcing its *in rem* rights under state law and did not violate the discharge injunction.  The district court agreed.

On appeal, the First Circuit reversed and concluded that GMAC had objectively coerced the Pratts into repaying the discharged debt as a personal liability.  *Id.* at 19.  The First Circuit recognized that a creditor's *in rem* rights in collateral typically survive a bankruptcy discharge and may be enforced according to state law.  The First Circuit then considered § 521(a)(2) which discusses a debtor's ability to surrender collateral along with the other alternatives of redemption

---

[5]*See* note 6, *infra*.

and reaffirmation. The First Circuit recognized that the Bankruptcy Code does not define the term "surrender." However, because "Congress did not use the term 'deliver,' " the First Circuit concluded that "the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral *available* to the secured creditor[.]" *Id.* at 18-19. The First Circuit also determined that "nothing in subsection 521(a)(2) remotely suggests that the secured creditor is *required* to accept possession of the vehicle[.]" *Id.* at 19. Accordingly, the court determined that the debtors' surrender of the vehicle did not require GMAC to "repossess the vehicle if GMAC deemed such repossession cost ineffective." *Id.*

The First Circuit then turned to the question of whether a debtor's stated intention to surrender requires the creditor to release its lien. In addressing this issue, the court recognized that "the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly." *Id.* (citation omitted). The court noted that "the line between forceful negotiation and improper coercion is not always easy to delineate, and *each case must therefore be assessed in the context of its particular facts.*" *Id.* (emphasis added) (citation omitted).

The First Circuit stated that there were five facts "material" to the "assessment of objective coercion" in the Pratts' case: (1) the debtors timely filed their § 521(a)(2) notice of intent to surrender; (2) the debtors made the vehicle available to GMAC; (3) the value and the condition of the vehicle made it necessary to tow it a salvage dealer who would not accept it without a lien release; (4) GMAC determined it was not cost effective to repossess the vehicle; and (5) state law would not allow the vehicle to be junked without a release of GMAC's lien. *Id.* Although "GMAC did not create all these circumstances" and there was "no record evidence that GMAC acted in bad faith," the First Circuit concluded that GMAC's actions were "objectively coercive." *Id.* The First Circuit held that GMAC's right to refuse to release its lien until the loan balance was paid in full under state law was outweighed by the strong federal interest in ensuring "that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." *Id.* (internal quotation marks and citations omitted). The court noted that "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction[.]" *Id.*

In summarizing its decision, the First Circuit stated that "the particular confluence of the above-mentioned circumstances renders the GMAC refusal to release its lien objectively coercive." *Id.* In so doing, the court highlighted two important facts. "First, GMAC announced that it did not intend to repossess the 'surrendered' vehicle because it was of insufficient value, then expressly conditioned its release of the lien upon the Pratts' agreement to repay the loan balance in full." *Id.* at 19–20. Second,

> as the Pratts could not junk the vehicle without a release of the GMAC lien, . . . they were confronted with the grim prospect of retaining indefinite possession of a worthless vehicle unless they paid the GMAC loan balance, together with all the attendant costs of possessing, maintaining, insuring, and/or garaging the vehicle.

*Id.* at 20. Thus, the First Circuit concluded that "the GMAC refusal had the *practical effect* of eliminating the Pratts' 'surrender' option under § 521(a)(2)" and coercing them into reaffirming the debt. *Id.*

In making this decision, the First Circuit cautioned that the inquiry was fact specific. "We do not suggest that a secured creditor invariably would be in violation of the discharge injunction were it to insist upon its *in rem* rights under state law." *Id.* If a creditor can provide justification for its actions that is not outweighed by the strong federal interest in providing debtors a fresh start, the First Circuit noted that the outcome might be different. *Id.*

The First Circuit revisited the *Pratt* decision in 2013 in *Canning v. Beneficial Me., Inc.* (*In re Canning*), 706 F.3d 64 (1st Cir. 2013). In that case, the Cannings filed chapter 7 and indicated their intent to surrender their residence to the mortgage holder, Beneficial Maine, Inc. ("Beneficial"). At the time of filing, the property was valued at $130,000.00 and the outstanding mortgage was $186,521.00. Beneficial did not foreclose on the property during the case nor did it release its lien.

Approximately two months after the Cannings received their chapter 7 discharge, Beneficial started sending correspondence to the debtors. The first letter informed the Cannings that Beneficial was not going to foreclose on the property and that the debtors would still be responsible for insurance, taxes, and maintenance on the home. The Cannings responded by demanding Beneficial either immediately foreclose or release its lien. Beneficial refused to do

either and stated that it would not release the lien until either the mortgage balance was paid in full or the parties could agree to some sort of compromise, such as a settlement offer or a short sale.  In each of its letters, Beneficial informed the Cannings that they were not personally liable for the mortgage balance because their account had been charged off.

Eventually, the Cannings informed Beneficial that they had moved out of the house, turned off the utilities, and instructed the relevant authorities that Beneficial was responsible for the residence.  The Cannings then reopened their chapter 7 case and filed a contempt proceeding against Beneficial for violation of the § 524(a)(2) discharge injunction.  In so doing, the Cannings relied exclusively on *Pratt* and argued that Beneficial "acted in an objectively coercive manner" in their case.  *Id.* at 68.  Beneficial disagreed and argued that the facts in the Cannings' case were markedly different from those in *Pratt*.  The bankruptcy court ruled in favor of Beneficial and the Bankruptcy Appellate Panel affirmed.

> On appeal, the First Circuit affirmed, explaining *Pratt* as follows:
>
> In reversing the bankruptcy court's judgment for the secured creditor, *we zeroed in on the following facts*:  (1) the secured creditor refused to repossess the car, but conditioned release of its lien upon *full payment of the loan balance*; (2) the debtors could not dispose of the car while encumbered and thus would have to keep it indefinitely (together with the accompanying costs) unless they "*paid in full*"; and (3) there were no reasonable prospects that the car would generate sale proceeds for the secured creditor to attach, as it was essentially worthless with limited possibilities of appreciation over time.
>
> . . .
>
> [W]e held that the secured creditor's posture in exclusively conditioning release of its lien on full payment of the loan balance amounted to a reaffirmation of debt demand that contravened "the stringent 'anti-coercion' requirements of [the] Bankruptcy Code[.]"  Similarly, we noted that the secured creditor's refusal to release its lien "had the practical effect of eliminating the [debtors'] 'surrender' option under § 521(a)(2)."

*Id.* at 70 (emphasis added) (citing *Pratt*, 462 F.3d at 20).

Turning to the Cannings' case, the First Circuit determined that it was factually distinguishable from *Pratt*.

> Absent from this case is the exclusive "pay in full" conditional release presented in *Pratt*. Rather, in this case, Beneficial offered to release its lien through either a settlement offer or a short sale. This not only indicates the intent to collect no more than the value secured by the underlying lien, as the bankruptcy court observed, but also denotes a willingness to negotiate a palatable solution for all involved.

*Id.* at 71. The First Circuit also recognized that Beneficial had offered alternatives to the Cannings and the Cannings failed to demonstrate why these alternatives were "unfeasible." *Id.* The court noted that the Cannings failed to present evidence of "other indicia of coercion, such as, for example, Beneficial's refusal to negotiate with the Cannings a compromise different to the one originally proposed." *Id.*

In their appeal to the First Circuit, the Cannings downplayed the factual differences with *Pratt* and asserted that Beneficial had determined that foreclosure would not be cost effective because the property's value had decreased. The Cannings argued that this decision jeopardized their fresh start "which is what the First Circuit in *Pratt* specifically prohibited a creditor from doing." *Id.* at 72. The First Circuit found the Cannings' "reading of *Pratt* …overly broad" and reasoned that

> [u]nder the Cannings' reading, we would have to find a discharge injunction violation every time a secured creditor opposes a debtor's "foreclose or release" demand based on the business determination that repossession is not cost effective. But …. *Pratt* unequivocally held that the applicable inquiry revolves around the *particular facts of each case*, with the value of the underlying collateral being only one of several factors to be considered.

*Id.* (emphasis added).

In cautioning that nothing in its opinion should be "relied upon to leverage a way out of the bargaining table," the First Circuit recognized the great benefits negotiation and compromise play in relationships between secured creditors and discharged debtors. *Id.* at 73. The court emphasized that "our remarks in *Pratt* still control: 'the line between forceful negotiation and

improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts.' " *Id.* (quoting *Pratt*, 462 F.3d at 19).

## III.    CASE ON APPEAL

In the case on appeal, Debtor does not dispute that the bankruptcy court set forth the proper summary judgment standard.  He also does not dispute any of the bankruptcy court's factual findings.  Rather, he asserts that the bankruptcy court erred in finding that Creditor was not objectively coercive and did not violate the discharge injunction.  He argues that this error was based on the court's incorrect interpretation of applicable law and that *Pratt* mandates a determination that Creditor violated the discharge injunction.[6]  In advancing this argument, Debtor makes several critical errors.  He distorts the factual differences between his case and those in *Pratt* and misconstrues the First Circuit's holding. He further downplays the relevance of the First Circuit's subsequent decision in *Canning*.  Lastly, he improperly argues that the bankruptcy court should have analyzed the case under *Taggart v. Lorenzen*.

The Panel rejects Debtor's argument that the "facts in *Pratt* are similar, if not identical, to the facts" in this case.  (Appellant's Br. at 15.)  Although many of the facts in the two cases are similar, the most important ones are not.  First, the vehicle in *Pratt* was "worthless" and there was no indication anyone was willing to purchase the vehicle.  In the case on appeal, Debtor valued the Vehicle at $150.00 on his bankruptcy schedules and the undisputed facts make clear that both Mr. Reis and at least one, if not two, salvage yards were willing to pay $100.00 for it.  Thus, the Vehicle had some economic value.  Second, the creditor in *Pratt* refused to release the lien unless and until the debtors paid the *full amount* discharged in the chapter 7 case.  In the case on appeal, Creditor never requested any specific amount of money from Debtor, let alone the full amount of the discharged loan.  Creditor simply responded to offers proposed by Debtor and Mr. Reis.  Creditor stated that Mr. Reis or an interested third party could make an offer for the Vehicle and present evidence of the Vehicle's value to Creditor.  Creditor would then consider

---

[6]*Pratt* is not controlling law in the Sixth Circuit; however, nothing in its reasoning would lead to a conclusion that Creditor violated the discharge injunction in this case.  Although the Panel concludes that the bankruptcy court did not err by following the logic and reasoning in *Pratt*, the Panel does not conclude that *Pratt* is the only approach to addressing violations of the § 524(a) discharge injunction.

whether to release the lien to the purchaser in exchange for payment of that amount. Creditor was merely attempting to ensure that if anyone was going to purchase the vehicle, Creditor would receive the value of its *in rem* lien.

Debtor's arguments also misconstrue the First Circuit's decision in *Pratt* in several significant ways. First, he asserts that the "gravamen" of the violation was the creditor's failure to release the lien. This is incorrect. The "gravamen" of the violation was GMAC's refusal to release the lien *unless* the debtor paid the full amount of the outstanding debt. *Pratt*, 462 F.3d at 20. Debtor also argues that once a creditor makes the decision not to repossess surrendered collateral, the creditor has an affirmative duty to release its lien regardless of whether the debtor requests such release. Nothing in the *Pratt* or *Canning* decisions mandates that a creditor release a lien without some compensation for its *in rem* interest. In fact, the First Circuit specifically acknowledged that failure to release a lien on collateral that has some value is not objectively coercive in and of itself. *Canning*, 706 F.3d at 71. If the collateral at issue is truly valueless, then the creditor's security interest in the property has no value and, thus, the "*raison d'etre*" for its lien is extinguished. If, however, there remains a modicum of value and there is an entity willing to pay that value, there is nothing objectively coercive about requiring payment of that amount in exchange for releasing the lien.

The Panel also rejects Debtor's argument that the presence of the five "material" facts listed in *Pratt* "necessarily and as a matter of law establish an objectively coercive situation." (Appellant Br. at 15.) Although the First Circuit listed five facts as "material to [its] assessment of objective coercion," it also made clear that GMAC's "pay in full" demand was a crucial factor in its determination. *Pratt,* 462 F.3d at 19. As the First Circuit stated, "the core issue is whether the creditor *acted* in such a way as to 'coerce' or 'harass' the debtor improperly" and such a determination is dependent on the "particular facts" of the case. *Id*. (emphasis added) (citations omitted). The only "material" fact that focused on the creditor's actions was "GMAC determined it was not cost effective to repossess the vehicle." *Id*. The First Circuit determined that this decision was well within GMAC's rights and that the debtors' surrender of the vehicle under § 521 did not require GMAC to take possession of the vehicle. Thus, the five "material"

facts do not take into consideration any action that could serve as the basis for a violation of the discharge injunction.

Additionally, the *Pratt* court never indicated that the presence of the five "material" facts, without more, established a kind of strict liability and a court would be hard pressed to find a sanctionable violation under them alone. *Taggart* requires a court to determine "there is no objectively reasonable basis for concluding that the creditor's *conduct* might be lawful" before holding a party in contempt. *Taggart*, 139 S. Ct. at 1799 (emphasis added). Quite simply, in order to be held in contempt, a creditor must *do* something other than decide not to repossess the collateral. The five "material" facts set forth in *Pratt* do not consider any action by the creditor, let alone something that demonstrates improper coercion or harassment.

Finally, Debtor misconstrues *Pratt* in arguing that it prohibits conversations such as the ones that occurred between Debtor and Creditor in this case. Debtor argues that these "conversations give creditors … the opportunity to request payment for a pre-petition obligation under the guise of requesting a lien release, and thereby coerce often unrepresented debtors." (Appellant Br. at 21.) Again, the violation in *Pratt* was GMAC's refusal to release the lien on a worthless vehicle until the debtor paid the total amount due under the pre-petition note. The violation had nothing to do with the fact that the debtors and GMAC had conversations post-discharge. "[T]he discharge injunction in § 524(a)(2) does not prohibit all communications between the secured creditor and the debtor, but only enjoins any actions and communications designed to 'collect, recover or offset' the debt as a " 'personal liability of the debtor.' " *In re Cantrell*, 605 B.R. 841, 853 (Bankr. W.D. Mich. 2019) (quoting 11 U.S.C. § 524(a)(2)).

Debtor argues that the only "purpose of the conversations" between Creditor and Debtor was for Creditor to "request[ ] payment for the pre-petition obligation[.]" (Appellant Br. at 21.) This is inaccurate. Debtor's chapter 7 discharge only extinguished Debtor's *in personam* liability for the car note. It had no effect on Creditor's *in rem* lien rights in the Vehicle. The lien survived the discharge and was enforceable under state law to the extent of the Vehicle's value. Both Debtor and Mr. Reis asserted that the Vehicle had some value as scrap. Therefore, Creditor's statement that it would consider releasing the lien in exchange for payment of this value was not a request for payment of the pre-petition obligation and was not objectively

coercive. There was no evidence that Creditor ever attempted to impose any *in personam* liability on Debtor.

Additionally, Debtor fails in his attempt to distinguish the First Circuit's subsequent decision in *Canning*. Debtor argues that *Canning* is not analogous because that case involved real property. As the bankruptcy court recognized in its opinion, "[t]he difference in the [*Pratt* and *Canning*] cases is in the facts, not that different law applies to surrender and *in rem* remedies depending on the type of collateral involved." *Bentley*, 607 B.R. 889, 897 (Bankr. E.D. Ky. 2019). The *Pratt* and *Canning* decisions both acknowledged the fact-specific nature of a § 524(a)(2) determination and placed great emphasis on the nature of the creditor's demand in comparison to the value of the collateral. The only significance the First Circuit placed on the different types of collateral was in recognizing that a vehicle's value rarely appreciates over time whereas the value of real estate often does. *Canning*, 706 F.3d at 72. Although the value of the collateral was at issue in both *Pratt* and *Canning*, the only role the nature of the collateral played was in determining the residual value of the creditor's collateral in comparison to the amount creditor requested to release the lien.

Debtor also argues that this case is distinguishable from *Canning* because Creditor did not prove that the Vehicle had value or that it had offered Debtor a "feasible" or "viable" alternative to continued ownership of the Vehicle." (Appellant Br. at 25.) In making this argument, Debtor improperly attempts to shift the burden of proof in this action from himself to Creditor. It is the debtor who carries the burden of proving that a creditor violated the § 524(a)(2) discharge injunction. This includes the burden of demonstrating that a creditor's alternatives were "unfeasible." *Canning*, 706 F.3d at 71. Additionally, the undisputed facts demonstrate that Creditor's actions in this case mirror the creditor's actions in *Canning*. As in *Canning*, Creditor exhibited a willingness to consider the various methods for disposing of the Vehicle. In *Canning*, the creditor's willingness to consider a settlement weighed heavy in the First Circuit's determination that it had not acted in a coercive manner.

Like the debtors in *Canning*, Debtor made no attempt to demonstrate why the settlement Creditor proposed was unfeasible.  The evidence demonstrated that Creditor was wholly willing to release its lien once it received proof and payment of the Vehicle's value.  Although Debtor argues in his appellate brief that the options Creditor gave were "unduly onerous and comprise an impermissible burden on a debtor's fresh start," such argument is without merit.  (Appellant Br. at 22.)  Creditor never required Debtor to do anything other than direct the party wishing to take possession of the Vehicle to contact Creditor.**7**

Debtor also asserts he was burdened by the ownership of the Vehicle because he had to pay personal property taxes for it, and it took up space on his property.  A debtor's surrender of collateral "does not divest a debtor of ownership and its obligations." *Maple Forest Condo. Assoc. v. Spencer* (*In re Spencer*), 457 B.R. 601, 612 (E.D. Mich. 2011) (citations omitted).  And, as *Pratt* and *Canning* make clear, a debtor's surrender of collateral under § 521 does not require a creditor to take possession thereof.  *Pratt*, 462 F.3d at 19; *Canning*, 706 F.3d at 69-70.  Until title of the Vehicle was transferred to a third party, Debtor was responsible for the obligations associated with ownership.**8**

Lastly, Debtor asserts the bankruptcy court erred in failing to analyze the case under *Taggart*.  As stated *supra*, the bankruptcy court determined that Creditor did not violate the discharge injunction.  As such, the court concluded it did not need to determine whether Creditor's actions were sanctionable under *Taggart*.  The bankruptcy court did not err in this decision.  *Taggart* is only applicable after a court has found that a party violated the discharge order.  *Roth v. Nationstar Mortg., LLC* (*In re Roth*), 935 F.3d 1270, 1276 (11th Cir. 2019).  Thus, if the creditor did not violate the discharge injunction, there is no need to analyze the creditor's actions under *Taggart*.

---

**7**Debtor also argues that his inability to "convince" Creditor to accept an offer to release the lien proves how burdensome Creditor's "demands" were.  There is no evidence that Creditor ever received an offer in this case.  Thus, there was nothing for Creditor to accept or reject.

**8**Debtor cites additional cases in his brief that the Panel finds easily distinguishable or inapplicable.  As such, it is unnecessary to address them.

**CONCLUSION**

In this case, the bankruptcy court correctly interpreted the summary judgment standard under Federal Rule of Civil Procedure 56, the discharge injunction of 11 U.S.C. § 524(a)(2), and the First Circuit's decision in *Pratt v. GMAC* (*In re Pratt*), 462 F.3d 15 (1st Cir. 2006). It also committed no clear error in analyzing the facts in the case. As such, the Panel affirms the bankruptcy court's October 2, 2019 memorandum opinion and order.